All right, the court is prepared to hear argument in the second case for this morning, United States v. Price. We will hear from the appellant. May it please the court, William Glasser for the United States. The district court erred in holding that Section 922K facially violates the Second Amendment. Firearms with obliterated serial numbers are not typically possessed by law-abiding citizens for lawful purposes, and 922K is consistent with the historical tradition of regulating firearms and gunpowder. For these reasons, 11 other district courts have unanimously rejected the reasoning of the district court below and have upheld Section 922K. This court should do the same. The most straightforward way to resolve this case is to rely on the Supreme Court's articulation in Heller of the types of arms that are protected by the Second Amendment. In Heller, the court was looking at Miller, the 1939 case, dealing with the Second Amendment, and relied on the language in Miller that the Second Amendment protects firearms that are in common use. Hallucinating on what that means. Let me cabin this, at least in the way I understand it, and maybe my colleagues will help me to understand it better than you. But as I look at it, the language at least in the Bruin case puts us in the posture of two different steps here. Some would say there are a couple of threshold questions. We recently had a case to do with that. Maybe those threshold questions are whether part of the people and common use is part of Step 1. And then moving from Step 1 into the Step 2 historical aspect is another aspect. But if we decide this case on Step 1, we need not get to Step 2, I would say. Do you agree with that? I would agree with that. So why don't you approach that at least structurally? It would be helpful to me, and I'll ask my colleagues if they want to chime in and offer some other way from the beginning. Because otherwise, you know what we're going to do? We're going to spend our time talking about serial numbers and sawed-off shotguns all over the place and not really cabinet in the legal type structure that we need in order to be able to decide this case. And that's what's going to happen when we leave here. We're going to do that anyway, but I would like for the arguments to follow that flow. So to speak first to Step 1 under the Bruin case in terms of the standard that we're looking here. Absolutely, Your Honor. And I think that's where I was starting. My understanding is that the statements that we rely on in Heller are sort of Step 1 plain text kind of questions. What are those arms that are protected by the Second Amendment? And so Heller, looking back to Miller, said they are arms in common use. So in Heller, the court concluded handguns are in common use. But in explaining or elucidating what that in common use standard means, the court said, the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes. Now, the court did say in the following sentence, that accords with the historical understanding of the scope of the right. And so I don't think the court can completely divorce text and history. If you look at Bruin, it seemed to be saying that those things are often very closely connected. But the court doesn't need to go to that second step of looking for whether there were specific regulations at or near the time of the founding that would allow, that would support these kinds of regulations. Can I ask you a mens rea question that I just want to make sure I understand? Is it the government's understanding that under this statute, it's not nearly enough to know that you possess a firearm, and that that firearm, in fact, has an obliterated serial number? You have to know the firearm has an obliterated serial number? Your Honor, yes. The government has to prove that you know that the serial number is obliterated. So then there's just a hypo that the district court gives. So when the district court says a person who inherits a gun from a family member, and that that's not a concern, right, unless the person who inherits the gun knows it has a, like, an innocent recipient of a gun that they have no reason to know has an obliterated serial number is not liable under the statute, right? That's correct, Your Honor. I do think in that hypothetical, once the person learned that it had an obliterated serial number, it would be a different story. Sure, but if the government just comes in and is like, you have this gun. It's like, I inherited that from my grandfather. I had no idea it had an obliterated serial number. I haven't looked at it since my grandfather gave it to me. Absolutely, Your Honor. And I think just temporarily addressing that hypothetical, I think the error the district court made there is in assuming that once someone knows that they have illegal contraband, they don't have any obligation to do anything about that. So if you inherit stolen property, if you inherit your great uncle's narcotics stash, you can't just knowingly hold onto that. You have to dispose of it in an appropriate way. So I don't think that that hypothetical the district court used was persuasive. But under the sort of plain text first step... So that hypothetical necessarily makes the recipient not a law-abiding possessor of that gun? Your Honor, once the person knows that the serial number is obliterated, then yes, we would say that that's not law-abiding. It would be not law-abiding under federal law and under the laws of the states. But we're not necessarily relying so much on the sort of law-abiding question that obviously has bigger implications in the felon in possession context. What we're really relying on is Heller's explanation that the Second Amendment doesn't protect those weapons not typically possessed by law-abiding citizens for lawful purposes. And you combine those two things together, and I think it's very easy to conclude that firearms with obliterated, altered, or removed serial numbers are not typically possessed by law-abiding citizens for lawful purposes. The ATF statistics indicate that even guns that are recovered from crime scenes, only about 3% of those have obliterated serial numbers. If you look at sort of the larger picture outside of crime guns, that number has to be significantly less. These are not the kind of firearms that are in common use for lawful purposes such as self-defense. And that is the standard that Heller articulated for the types of firearms that are protected by the Second Amendment. The differentiation here seems to be more so in the question of what's being brought here in a facial challenge as opposed to an as-applied challenge. Yes, Your Honor. So, I mean, we think that 922K is constitutional in all its applications. We don't think that someone could bring a successful as-applied challenge to Section 922K. But it is important to note the district court here concluded that Section 922K was unconstitutional on its face. That means in all of its applications. And so Mr. Price had the obligation of affirmatively showing that it is unconstitutional in all its applications. And we think the district court erred in concluding that it is. So Heller talked about arms that are commonly possessed. And then it talks about dangerousness in terms of unusually dangerous firearms. Are they the same thing? No, Your Honor. I don't think they are. Although the court did say in Heller that the limitation on dangerous and unusual weapons fairly supported that common use limitation. And I think the reason that they're different is that if you look at Heller, Part 2 was discussing what kinds of firearms are protected, looking back to Miller. And that's where the court said that the Second Amendment does not protect firearms not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. And the next sentence says, That accords with the historical understanding of the scope of the right. See Part 3, Infra. And in Part 3, the court went on to sort of expand, zoom out, and look at some of the other limitations that are inherent in the right, such as saying we're not calling into question limitations on concealed carry, felons, et cetera, and ended with a discussion, again, of the in common use requirement, and then went into that history related to the dangerous and unusual firearms. So I don't think that they're the same. There is certainly an argument to be made that firearms with obliterated serial numbers are dangerous in one sense, in that they are commonly sought out by criminals because it allows them to commit crimes without being traced back to a particular firearm purchase. But the government is not relying here on an argument that firearms with obliterated serial numbers are dangerous and unusual in the sense contemplated by Heller. In the sense that a machine gun is dangerous. That's correct, Your Honor. I think short-barreled shotguns are another example of something that just by its nature is more dangerous. But I think that actually also supports the government's argument here that a firearm with a serial number, or one that was originally manufactured or imported without a serial number, is just as effective for purposes of self-defense as one with a removed, altered, or obliterated serial number. There's simply no reason why someone seeking to exercise the right of self-defense needs to have a firearm with an obliterated serial number. Since 1968, all firearms manufactured or imported within the United States have had serial numbers. So in that sense, it's different than Heller, right? So in Heller, the court rejects the, you can have long guns so you don't need handguns. And the court says in Heller, yeah, except the fact that everybody knows that handguns are way more useful for self-defense than long guns. Exactly. Is that the... Exactly, Your Honor. There's no indication, and I don't understand the district court or Mr. Price to have argued that firearms with obliterated serial numbers are more desirable for any purpose, much less the lawful purpose of self-defense. And I think just common sense indicates that law-abiding citizens who desire to possess firearms for lawful purposes such as self-defense will actually want serial numbers on their firearms. It allows them to be able to trace their firearms if they're stolen. It allows them to know the provenance of those firearms if, for example, they're collector's items. So there's simply no reason for a law-abiding citizen seeking to use a firearm for lawful purposes. Can I ask you, do you think our decision in Maryland shall issue has anything to do with this case? And if so, what do you think it has to do with this case? Your Honor, I think it has a little bit to do with this case, although I don't think it's dispositive. I think based on footnotes 8 and 9 of Maryland shall issue, this court probably can't accept the government's argument in our brief that there's no infringement on the right because of the fact that you can possess all these other firearms. Maryland shall issue seemed to say that any sort of limitation on the right, the only question is, you know, is there any burden at all? Now, we think that's... Although, couldn't you say that the right... I take your point that you probably can't win on infringe. It's not clear to me you still can't win on the right. Absolutely, Your Honor. I think we can win sort of on two other bases. But just in order to answer your question, I don't think the court could rely on our reading of infringe. We do think that Maryland shall issue is wrong and don't think that certain de minimis limitations... I'm sorry. Maryland shall issue also had to do with handguns, and it didn't address whether handguns were ordinarily possessed by law-abiding citizens because the Supreme Court had already said those are protected, so I don't see the relevance of Maryland shall issue to this case. Your Honor, I think the relevance is in footnotes 8 and 9 of Maryland shall issue. The court rejected Maryland's argument that there was no infringement on the right because it didn't completely deprive people of handguns. It just imposed a 30-day requirement, and Maryland, similar to the government in our brief here, relied on footnote 9 of Bruin, which indicated that certain shall issue carry licensing schemes were permissible, even though they imposed certain requirements such as fingerprinting or background checks or those sorts of things. But if I can return to the point that Judge Hayden's made, all of our arguments also apply to the scope of the right and the type of weapons that are protected by the right, and should this court conclude it needs to reach that subsequent historical step, I think the same arguments apply that if you look at the type of burden that's imposed here, it's a very minimal burden compared to some of the historical laws that the government cites. It only burdens the firearm possession of a very limited class of individuals who have obtained firearms with obliterated serial numbers or who have themselves obliterated the serial numbers on their firearms. So even though the court probably shouldn't, under Maryland shall issue, rely on our infringement argument, our frontline argument from Heller about what types of arms are protected by the Second Amendment still stands. Maryland shall issue does not call that into question. And I think Maryland shall issue's historical discussion similarly doesn't call into question any of the analogs that the government has cited here. What about the argument that with sawed-off shotguns, we're dealing with functionality of the gun that makes it dangerous, whereas in this instance we're talking about removed serial numbers. That doesn't affect the functionality of the gun. And the argument is that, well, Second Amendment says I can possess a gun, and it is a gun. But its functionality is no different than one that has a serial number on it. Sure. How do you respond to that? Your Honor, I don't think that the government's ability to regulate firearms hinges upon solely the functionality of the gun. So for example, we point to historical regulations relating to commerce and firearms had nothing to do with the functionality of the gun. It was just the government can impose certain regulations on guns. I think arguably the barrel-proof laws that we point to did involve the functionality of the gun. But we point to the restrictions on the sale and dispossession of firearms that were really concerned with firearms falling into the hands of those who could be dangerous or simply being exported outside of a colony.  regardless of whether the gun is something like a sawed-off shotgun or a machine gun that is that type of dangerous and unusual weapon. And so really we think that, in fact, the fact that there's no limitation on functionality supports the government's argument that anyone who seeks to exercise their Second Amendment right of possessing a firearm for lawful purposes such as self-defense can do so with the vast majority of firearms that are available. If you go to a federally licensed firearm dealer, if you go to a gun show, if you try and obtain a gun from your brother-in-law, those are going to be guns that have serial numbers or were manufactured before 1968 without them. And guns with removed, altered, or obliterated serial numbers are uncommonly possessed. They're possessed for the purpose of evading, tracing, often in connection with crimes. And therefore they are not guns that are in common use or, as the court said in Heller, are typically possessed by law-abiding citizens for lawful purposes. If the court has no questions about the historical step, I'm happy to reserve my time for rebuttal. Thank you, Mr. Black. So we'll hear from you, Mr. Coleman. Good morning, Your Honors. Judge Wynn, Judge Tingley, Judge Thacker. Let's start with the first step. Text and history is where Bruin took us. The fundamental change in Bruin from Heller and really all the cases in between the two were that we went to this is a presumptively constitutional right, so anything you have that touches on it, that burdens it in any way, is presumptively unconstitutional until the government establishes it can do so. That's completely contrary to the entire 20th century of firearms regulation. We had rational basis review. That makes sense. We'll do it. What is the lawful purpose? Sir? What is the lawful purpose that a person would want a firearm with an obliterated serial number? That's good you get to that because the Third Circuit, as well as the government, has presumed anything without a serial number must have a nefarious purpose. Okay, I'll use Judge Goodwin's example, and let's assume everybody knows. Let's be clear. Any firearm manufactured after the 1960s, I mean, you could have a totally non-nefarious purpose to possess a gun that doesn't have a serial number that was manufactured before there had to be serial numbers. Exactly. What would be the non-nefarious purpose to have? But that's not covered by this statute. So what's the non-nefarious purpose to possess a gun that was manufactured at a time when they were required to have serial numbers that doesn't have one? Wait, not just that doesn't have a serial number, but that has an obliterated serial number. Well, we've got the landlord clearing out an apartment who finds a gun, sees it has no serial number, and keeps it. Wait, but Mr. Glazer's point, just like if you find heroin in the apartment, you can't keep it. I'm sorry. I'm saying, well, under Bruin now, my argument is we can't. Because what does Bruin say? Bruin says if it burdens a right, it's constitutional until they can prove they have an historical analog that will allow you to prohibit it now. Worrying about criminals having guns is a problem that's been around since before this country was founded. Let me give you a hypo that suggests to be a problem for your argument. Say that your client possessed a firearm, not that had an obliterated serial number, but a firearm that on its barrel had an image of what courts euphemistically call child pornography. Would you say that it infringes the Second Amendment to prosecute someone for possessing a firearm whose decal has an image of child pornography on it? It's a handgun. It's a handgun on whose grip there is a picture. That picture is child sex abuse material. Well, that's really interjecting contraband that goes way beyond the role of the Second Amendment. Okay, how about, let's take it somewhat less fanciful. A firearm whose grip had illegally imported ivory on the grip. Would it be unconstitutional to prosecute someone for possessing that firearm? That would go to knowledge about the ivory in the contraband, Your Honor. Right, knowledge of the ivory in the contraband. But would it be unconstitutional? That we'd have to go through the Bruin analysis, wouldn't we? I'd like to know what your answer to the Bruin analysis to that is. Looking at it here, let's see. If we prohibit you from having it because it has a characteristic that is nonfunctional, that would produce a presumption of unconstitutionality. And then do we go through the historical analysis and say, all right, other laws have prohibited things. Is there a history and tradition of prohibiting firearms and punishing people if that's on there? I'm not aware of what that history would be. I'll give you a simple answer and simply say it's the pornography that's the aim, not the gun. It's the ivory that's the aim, not the gun. That's a simple answer. That is on the ivory, not so much that I'm not going to couple that. We've been hitting on this. What we're saying is what lawful purpose would a person with an obliterated, would want a gun with an obliterated number? Why do you – what lawfulness? I understand with the circumvention, it gives you certain rights. But, you know, there is that point there. And we're simply trying to get an answer to that question. What is that lawful purpose that they would have that gun for? Why is it a burden on the defendant to show the lawful purpose? They've obliterated the number on it. Because they – I had a real simple one, and I cited it in my brief with Justice Brandeis' law review article. Why would you do that? And the Olmstead decision. Why would a lawful person obliterate the number on a gun? Maybe I just don't want anybody to know. Okay, can I – What's wrong with that in America today? Well, it's sort of – It's not illegal. Tracking criminal conduct. Those are the ones that don't want you to know. Your Honor, I've been doing this since 1998, which is nothing special. I have had a trace report in every gun case I have had on the panel and as a public defender. I've had five where that's been legally significant. And the legal significance was not in solving another crime, but in adding two additional criminal history points where we're doing the guideline calculations. Everyone presumes that there must be some nefarious purpose, must be some really big deal removing a serial number. Some, it may be the aesthetic. There's an affidavit on file with a Kansas City case right now where the gun was so rusty to repair it, it took removing the serial number. We've gone through the different situations. People can innocently come into possession and they retain it because the number's on it. The number does not render it safer. It doesn't affect the amount of powder in it, the size of bullet or the caliber it will take, the capacity of the magazine. Whether it's an assault-style weapon, it does nothing except empower the government to go, I know you have it. Okay, can I ask you a couple? So there's a federal statute that says if you manufacture or import a firearm, you have to put a serial number on it, correct? That's true, but that's not what's at issue. Well, do you think that law is unconstitutional? I don't think it's relevant to the point before the court. Assume for the sake of argument this member of the court thinks it's relevant. What do you think is the answer to that question? I'm sorry, Your Honor, I wasn't diminishing your relevance. There have been statements in prior cases that Heller did not affect the commercial regulation of firearms. Okay, so then there's another statute that says if you have a firearm that has a serial number on it, it is illegal to obliterate the serial number, right? There's a statute that says that? Yes. You think that statute is unconstitutional? Yes. Interesting. So it's not just the statute that knowingly – I mean, I assume the reason you think that is because if you don't think that statute is unconstitutional, you have to lose here, right? Because if the government can criminalize obliterating the serial number, the government can criminalize knowingly possessing a firearm with an obliterated serial number, right? Correct. Okay, so you would have us hold not just what the district court held here, that this statute is unconstitutional, but a necessary implication of your argument is that the law that makes it illegal to obliterate the serial number is also unconstitutional. Well, Your Honor, I'm trying to defend what the district court did with this statute. Sure, but your argument is that in order to reach the conclusion the district court did, we would also necessarily conclude that the antecedent statute, the one that makes it illegal to obliterate the serial number, is also unconstitutional. I – there are active distinctions between the two, and I'm here before you on possession. It just – the reason I say that is it seems very hard for me to maintain that the government can require you to include a serial number, the government can criminalize obliterating the serial number, but that the government can't criminalize knowingly possessing a firearm with an obliterated serial number. Like once you can see the – once a court were to conclude the first two laws are constitutional, it seems very hard to see how the third would be unconstitutional. Because essentially, when we think about it, the first two laws essentially render a firearm with an obliterated serial number contraband. Because once a firearm has to have a serial number, and once it's a crime to obliterate the serial number, the knowing possession of a firearm with an obliterated serial number is basically contraband, right? And it's been contraband since 1968. Right. Right. And when I apply Bruin, which says we have to look at text and history, the Second Amendment does not distinguish between serialized and unserialized weapons, between possessing and keeping arms, whether they have a serial number on them or not, whether you removed it or not. And I think we get to Bruin's first step. I've got a government concession to that in the reply brief on page 8 of document 32. The Second Amendment protects keeping and bearing arms. All the cases cited between Price and the Texas R&R I put in my 28-J went off on this whole thing about, well, what we're looking at in step one is just keeping and bearing arms, or is that too general? And we've got to look at keeping and bearing arms without serial numbers. And the non-general, I think, governs step one. Not without serial numbers. With obliterated serial numbers. Can you just at least use the appropriate terminology? Obliterated serial numbers. That's what makes it illegal. Very well. Obliterated serial numbers. Removed serial numbers. Dammit. Yes, ma'am. But that's the point. There's a presumption of unconstitutionality under how Bruin flipped it, under how it changed the burden, under how it changed the presumptions. I know what Heller said, but I also know how Bruin recouched it or, as some courts have put it, refined it. As the Supreme Court put it itself, it wasn't rejecting Heller. It was refining it. And what it says, you do agree that Heller says, distinguishes between arms in common use for illawful purposes and those that are not. Do you agree with that? Well, we're getting into that. I'm asking as to what Heller says and whether we can agree that is what that case says. And the case in Heller says that there's a distinction between arms that are in common use for illawful purposes and those that are not. Do you agree that Heller makes that statement? I agree it makes it, but it also adds to it in that definition that you have those as well as guns that are not unusual and dangerous are protected by the Second Amendment. That's in discussing Miller. And that's really in kind of going out of the way of its main holding, recognizing an individual right. These other comments, like with mental incompetence, with felons, and then with different types of guns, the key point of Heller, one, pistols or handguns were the quintessential weapon. Two, that were inherent to individual self-defense that the Second Amendment protected. Up until that point, we had had the collectivist militia interpretation of it, which pretty much let the United States and Congress regulate whatever they wanted. Did Bruin change that law that we now agree Heller says, the law that there's a distinction between arms that are in common use for a lawful purpose and those that are not? Did Bruin change that? I didn't see Bruin address that. It was about handguns. My question is, did it change it? I don't think so, Your Honor, no. I will say this. Footnote 9 of Bruin did not approve the other 43 shall issue or may issue, the other handgun regimes that were not before it. There were comments about it, comments on it. It was dicta because they didn't rule on it, and they certainly didn't approve each one for individual examination. The government has asserted that in case after case after case, footnote 9. Footnote 9 does not tacitly or expressly approve all those regimes. They just say we're not ruling on them, we're dealing with these six. So if we follow Heller in that line, would you say or do you believe that there are firearms with obliterated serial numbers in common use for a lawful purpose? How do we know? No, that's a question. I know. Because Heller asked that question. It distinguishes between the two types of firearms. My question to you in terms of where your position is, that that would indicate that you have to say that there are obliterated serial number firearms in common use for a lawful purpose. True? I don't know. It's not in the record. That's the point, Your Honor. Well, give me the other side. Are there obliterated serial number firearms in common use for an unlawful purpose? I haven't seen enough to answer that either, personally. We don't have numbers where we're recording them. We've had a system in place since 1968. I'm not asking for your personal observations. I'm asking you to import maybe common sense or maybe to some extent what the cases have shown. In criminal cases as to whether there have been instances where individuals obliterated serial numbers for an unlawful purpose. I see that assumption made in every case the obliterated gun is there. I haven't read a transcript where a criminal has admitted it. I've read courts that have made the assumption under the rubric of common sense and other assumptions. I have not seen statistics kept by the Department of Justice or any other entity establishing the number of obliterated serial number guns in circulation and the number that have been seized despite tracing technology having been there since 1968. What we're getting to is, again, the burden. It's not are the guns with or without serial numbers. Do people have guns? Do they have handguns? They'll have them whether they have serial numbers or not. If they need them for self-defense, we'll want them at a given point in time. You don't need a handgun with an obliterated serial number for self-defense, right? You could have a handgun for self-defense that does not have an obliterated serial number, correct? You can, yes, ma'am. So this isn't infringing on the right to have a handgun for self-defense. It's infringing on, well, it's not infringing on any lawful purpose, but it is going after the possession of handguns for an illegal purpose. I just can't understand how, under any common sense, possession of a weapon with an obliterated serial number would be typically possessed by a law-abiding citizen. Where are you coming with that? I'm coming at the Second Amendment right, while it's not unlimited. The government doesn't have the right to know every gun. It sounds an awfully lot unlimited, based on your argument, because I'm not sure I heard your answer to Judge Hyten's question when he asked you whether or not, in your view, the statute that makes it illegal to actually obliterate the serial number is unconstitutional or not. Is that statute unconstitutional? I told him in my argument, yes. But as I've tried to think about it more on my feet... That it's unconstitutional? That it's unconstitutional, yes. If I apply ruin to it, I believe it is. Okay, then your argument makes the Second Amendment limitless, unlimited. There's nothing, no law that can apply to gun ownership that's not unconstitutional. Well, no, ma'am, that's swinging too far the other way. I'm not arguing that. It certainly is. Why is it that you said that the statute that makes it illegal to actually obliterate the serial number is unconstitutional? Why? I'm doing that as a derivation with Bruin, Your Honor. Again, my client possessed it. And I came in prepared to argue that. But if we're going to go the next step to removing it... You know what? You should be prepared to argue and answer whatever questions the court asks of you. Yes, ma'am. And the reason it's unconstitutional is the same reason under Bruin. It's a protected behavior, possessing the gun. I'm defining what's protected as possessing a firearm. What we do after that and what characteristics play in is all part of Bruin's second step. But you said that the actual obliteration of the serial number, making that unlawful, is an unconstitutional statute. That's what you said in response to Judge Heitens. Yes, ma'am. What part of the right to keep and bear arms includes the right to take a file to the barrel of a gun and obliterate a serial number? What part of the right that the Second Amendment codifies gives you the right to do that? This is where the right is being parsed down, where it's to keep and bear arms. Right. And saying you can't take a file to the barrel of the gun does nothing to prevent you from keeping and bearing arms in any way, shape, or form. Well, if we have the presumption that applies under Bruin's step one, we're into step two. And there's no history of prohibiting that with anyone. Up to 1968, you didn't need a serial number on a gun at all. There's no functional difference. Okay, but that now strikes me. Okay, if that's the argument you're going to make, then it seems like you have to swing even further and argue that the federal statute that requires putting serial numbers on the firearm or bans the importation to the United States of any firearm without a serial number is also unconstitutional. No, sir, because that's getting to the next step of the commercial trading in it. Once it gets to the end user. I mean, I made a joke in the brief about a mattress tag, but it's kind of like that. Once you get it, once it's in the possession of the end user, once it's within the umbrella of the fundamental right of the citizen having the right of social defense. Bruin is very clear that the presumption of unconstitutionality only applies once within the text of the Second Amendment. Correct. So that means in order to say that that second order law is unconstitutional, you have to explain to me how it falls within the text of the Second Amendment to say taking a file to the barrel of the gun and obliterating a serial number is within the right to keep and bear arms. There's no presumption of unconstitutionality until you can persuade us that that is within the text of the Second Amendment, and I don't see how that's within the text of the Second Amendment. All right, well, that's what I'm trying to address. No, you jumped to step two. How is it within the text of the Second Amendment to say you can't take a file to the barrel of your gun? What is the conduct? And I'm not asking this to be facetious. I'm trying to discuss it with you. The conduct being protected by the Second Amendment is possessing and keeping a gun. Now I do something to it after I have it. I've already got the protection of the Second Amendment for possessing and keeping the gun. If we're going to do something different now and subject me to a criminal penalty, there better be an historical textual basis for doing it and adding that regulation. That's the part that I think is wrong textually. Just like you can't slap illegally imported ivory on the grip once you've purchased the gun, you also can't file off the serial number. I just don't see how those are any different. I don't know that the ivory would prevail. That's what I tried to say earlier. Is it the government would prevail or the defendant would prevail? That the government would prevail. You think the government can't criminalize slapping illegally imported ivory onto the grip of a gun? I'm saying if we're working within the Bruin analysis, we've got to go through the steps. It may or may not. I haven't analyzed it on that basis. But I think we start with step one, with the conduct that's being infringed upon. And I think infringe is important, and I think Mayshell issue is definitely relevant here, where it made that recognition that just because you have alternatives doesn't mean you don't have an infringement that can be addressed under Bruin. And that's... There's a difference between you have a right to purchase a shotgun but you don't have a right to saw off the barrel of it. In other words, what you just mentioned, the alteration of it, is something that is prohibited there in the instance of purchasing a gun, sawed-off shotgun, you can't saw that barrel off, but you're saying it's okay when you don't have the same analogy in terms of dealing with IV or pornography or anything else. Well, Judge Wendt, I can manipulate a lot of guns if it's not within 18 inches of the barrel. I can manipulate the gun on the handle under the ATF regulation to where it's shorter. Let me ask you one last question. You seem to be eluding or avoiding the connection between obliterated serial numbers and the value in terms of pursuing those who are engaging in criminal conduct. If we hold in your favor, what incentive is there for any gun owner, lawful or unlawful, to keep a serial number on a gun? I mean, if you have a homeowner who has a gun lawfully stolen, why wouldn't they obliterate that serial number so you wouldn't know it can go back to that homeowner? Or if someone negligently leaves a gun in a car, just does it negligently, I just left a car and the car was unlocked, someone gets it and potential liability could arise from the fact that gun could be traced to me. Why wouldn't I take that gun and take that serial number off because the law says you can do it? Because there's no reason for me to do that because it could be traced back to me. So is that the end result? That every gun in America, there's no reason, if we hold in your favor, because you say you can take it off, that every gun, you don't obliterate that serial number, whether you want to be lawful purpose or unlawful. Is that not the end result? The end result is the end user of the gun can do, the citizen can do what they want. That's inherent in self-defense. Thank you. Any further questions from either panel? I've gone over time. Thank you. Thank you for your time. Mr. Glasser, you have a few minutes in rebuttal. Thank you, Your Honor. Just a few brief points. I understand, Mr. Price, to be arguing that the key question is that if a law burdens the right, then we move to the historical step. I think it's that if that we're disagreeing on here. In fact, Section 922K does not burden the right protected by the Second Amendment. What he seems to be doing, at least if I were to disseminate what I think the simplest way to look at it is, I think he's focused on the text of the Second Amendment. There's been a lot of talk about this textualism and stuff. He says if you look at nothing but that text, possession is a right. And it's not a question whether or not you can do that or do this to it. And that's where it should start in the end. At least I think that's where it goes. And so we don't get this second step because it's already stopped in the plain text of it. There's nothing in the Second Amendment that says something about what you can. It tells you possession of the gun. That's kind of the point. Your Honor, and I think it's important to understand from both Heller and Bruin that the textual step can't be completely divorced from history. So both Heller and Bruin looked at the text in light of history. Heller explained that the Second Amendment was adopted based on a long inherited right we inherited from our English ancestors. It codified a pre-existing right. That's what Heller said. And so Heller actually examined the text of the Second Amendment and said it doesn't apply simply to all arms. It doesn't apply to dangerous and unusual weapons. It doesn't apply to things like machine guns, sawed off shotguns. It doesn't apply to those firearms that are not in common use. So Heller was looking at history, yes, but to interpret the text of the Second Amendment and has authoritatively interpreted it to apply only to firearms that are in common use. And so that's why we just disagree with Mr. Price on whether or not we've satisfied the if it burdens the right. Section 922K does not burden the right because, as Heller said, the right the court said at page 626 of Heller it is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. But does a plain text of the Second Amendment include the words in common use for a lawful purpose? No, Your Honor, it does not. But the Supreme Court has authoritatively interpreting the Second Amendment read those words into the amendment. On the theory that when the Second Amendment refers to the right of the people, the right of the people is the right to possess guns lawfully in common use? Exactly, Your Honor. And Heller explained that it was a pre-existing right. So it looked to ratification history, English history, all these things to understand when it says the right, it doesn't spell out what that is. Some analogy is like no one would have thought in 1789 that the right to keep and bear arms includes personal possession of a cannon. Your Honor, no. I'm agreeing that they would not think that it included the right to possess a cannon because that wasn't a firearm in common use for those who engaged in militia service or who kept firearms for personal protection. I suppose if they could have afforded one or could have gotten one, it would have been in 1787. Your Honor, I'm not aware of any laws at the time of the founding prohibiting cannon possession by individuals. But again, that's not really the question. The question is whether or not at the time the right was understood to protect that specific conduct. And just to briefly address something Mr. Coleman said, he said that Heller was sort of going out of its way to talk about the types of firearms it possessed. I don't think that's the case. I think this was key to Heller's holding. It's true that Heller when it spoke, for example, about the felon prohibitions, that wasn't sort of essential to Heller's holding. But I think it was essential to Heller's holding to first say, okay, when it says arms, what does it mean? That means arms in common use. And actually at the time of the founding, handguns such as semi-automatic handguns were not in common use. But the court said today handguns are in common use. D.C.'s law burdens handgun possession in the home and therefore it's unconstitutional. So I think the common use step was actually key and an essential part of Heller's holding. Just to briefly address Mr. Coleman's statement that maybe there could be an aesthetic purpose for removing a serial number. And it wouldn't be an unlawful or nefarious purpose. In fact, removing a serial number is harmful to the original finish of the gun. It makes it far less valuable for collector's purposes. It's just not the kind of thing that someone does unless they want to avoid tracing of that firearm because it's a stolen firearm or because it's been used in a crime. Let me ask you about the instance, maybe this is more as applied as opposed to the statute facially, but an individual who if he knew there was a gun in the home that had an obliterated serial number is then confronted in a situation of complete danger which they needed to defend themselves. Does this statute prohibit him from using or possessing that gun for that purpose to self-defense in that instance? Your Honor, I can't recall the name of the case, but I believe that this court has recognized a duress or necessity defense for firearms laws. I think that was in the context of the felon in possession laws, but I think the same thing might apply under 922K. Obviously the government's position is that that defense should be carefully cabined and someone can't just keep what is otherwise contraband around for sustained periods of time in case they need it for purposes of self-defense. For the reasons that we've articulated, we'd ask the court to reverse the decision of the district court. Mr. Glass and Mr. Coleman, I want to thank both of you for bringing a very interesting case to the Fourth Circuit. We will ponder it accordingly, but now we'll come down and greet you as in our tradition and then we're going to take a brief recess before we proceed to the final case. This honorable court will take a brief recess.
judges: James Andrew Wynn, Stephanie D. Thacker, Toby J. Heytens